UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
AVRAHAM MILLER,

                        Plaintiff,                        **REPORT AND RECOMMENDATION**
                                                 **19 CV 5580 (AMD)(LB)**

    -against-

EAST MIDWOOD HEBREW DAY SCHOOL,

                        Defendant.
---------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff, Avraham Miller, brings this action against defendant, East Midwood Hebrew Day School ("EMHDS"), alleging defendant discriminated against him based on his disability and failed to accommodate him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the New York State Human Rights Law ("NYSHRL"), NY Exec. Law §§ 291, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), NYC Admin. Code §§ 8-101, *et seq.* Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. On January 21, 2020, the Clerk of Court entered a default against defendant pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

       The Honorable Ann M. Donnelly referred plaintiff's motion to Magistrate Judge James Orenstein for a Report and Recommendation. On November 16, 2020, this case was reassigned to me. It is respectfully recommended that plaintiff's motion should be granted in part and denied in part as set forth herein.

# BACKGROUND[1]

Plaintiff was a teacher at EMHDS, a religious school in Brooklyn, NY from August 31, 2017 until May 17, 2018. ECF No. 1, Complaint ("Compl.") at ¶¶ 8-9. Plaintiff's complaint alleges that, on January 21, 2018, he advised defendant that he was suffering from a small bowel obstruction related to his Crohn's disease, thereby putting defendant on notice of his disability Id. at ¶ 17. The next day, January 22, 2018, plaintiff was hospitalized for the condition, where he remained through January 30, 2020. Id. at ¶ 16.

Plaintiff returned to work but was incapacitated with a small bowel obstruction and an internal hernia related to his Crohn's disease on April 26, 2018 through May 16, 2018. Id. at ¶ 18. Plaintiff alleges that he advised the EMHDS Principal, Rabbi Fine, of his condition on April 26, 2018 and requested that he be excused from teaching because of his disability. Id. at ¶ 19. Defendant did not provide plaintiff with paperwork to be completed by his doctor nor did it otherwise discuss a reasonable accommodation with him. No short duration unpaid leave of absence was offered, which would have allowed plaintiff to retain his job. Id. at ¶ 20. Instead of engaging in an interactive process regarding an accommodation, as required by law, Rabbi Fine told plaintiff to "please keep [his] privacy [from now on]." Id. at ¶ 5. On May 17, 2018, plaintiff received an email from the EMHDS Principal, terminating his employment due to "excessive absenteeism." Id. at ¶ 21. Plaintiff alleges that defendant's conduct constitutes disability discrimination, that EMHDS failed to accommodate his disability and retaliated against him in violation of the ADA as well as City and State law. Id. at ¶ 22.

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

## PROCEDURAL HISTORY

On March 11, 2019, plaintiff timely filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"),[2] alleging claims for discrimination, failure to accommodate, and retaliation on the basis of his disability, and on July 24, 2019, the EEOC issued plaintiff a Notice of Right to Sue. Compl. at ¶¶ 13-14. Plaintiff then commenced this action on October 2, 2019, ECF No. 1, and filed proof of service on defendant. ECF No. 6. As prompted by the Court's January 9, 2020 Order, plaintiff requested, and the Clerk of Court entered, defendant's default. ECF Nos. 7-8.

On May 21, 2020, the Court ordered plaintiff to move for a default judgment or the action would be dismissed for failure to prosecute. See May 21, 2020 Order. On June 6, 2020, plaintiff filed the instant motion for a default judgment. ECF Nos. 9-12. On June 15, 2020 Judge Donnelly referred plaintiff's motion to Magistrate Judge Orenstein for a Report and Recommendation. Judge Orenstein directed plaintiff to submit any written materials in support of his request for damages and attorney's fees by July 6, 2020 and directed defendant to file its response to plaintiff's motion for damages and to provide a list of all witnesses who would testify at an inquest by July 13, 2020, noting that defendant's default is without prejudice to its right to contest damages. See June 15, 2020 Order. Plaintiff submitted a letter in further support of his motion for a default judgment, which includes a list of witnesses. ECF No. 14. Defendant did not respond to plaintiff's motion

---

[2] "Under Title VII, the statute of limitations for filing a charge of discrimination in states such as New York that have an agency with the authority to address charges of discriminatory employment practices is 300 days." Borrero v. Am. Exp. Bank Ltd., 533 F. Supp. 2d 429, 435 (S.D.N.Y. 2008) (citing 42 U.S.C. § 2000e-5(e)(1)). The 300-day period "functions like a statute of limitations." Martin v. State Univ. of New York, 704 F. Supp. 2d 202, 222 (E.D.N.Y. 2010) (citations omitted). Any claim based on conduct that occurred more than 300 days before the filing of the administrative claim is time-barred. See Russo v. New York Presbyterian Hosp., 972 F. Supp. 2d 429, 442 (E.D.N.Y. 2013).

for default. On November 16, 2020, this case, including plaintiff's motion for a default judgment, was reassigned to me.

## DISCUSSION

### I.  Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, [a] plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). However, regardless of the assumption of truth, the Court has a

"responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." <u>Rolls-Royce PLC v. Rolls-Royce USA, Inc.</u>, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." <u>Id.</u> (internal quotation marks and citation omitted).

Here, defendant's default is beyond dispute. Defendant was served with process on October 8, 2019 and, to date, has failed to respond to plaintiff's complaint. Further, plaintiff demonstrates that he has taken the required steps under the Local Rules by requesting and obtaining a Certificate of Default, making an application to the Court for a default judgment, and filing proof that the motion has been sent to defendant. ECF Nos. 7, 9, 13; <u>see</u> Local Civ. R. 55.2.

## II.     Jurisdiction

This Court has subject matter jurisdiction over this action because it arises under the ADA, a federal statute. <u>See</u> 28 U.S.C. § 1331. It has supplemental jurisdiction over the related NYSHRL and NYCHRL claims arising out of the common set of facts. <u>See</u> 28 U.S.C. § 1367.

## III.     Liability for Discrimination

Passed by Congress in 1990, the ADA was intended to ensure that people living with disabilities have access to all the same opportunities as those without disabilities, prohibiting discrimination in critical areas, including employment. <u>See</u> 42 U.S.C. §§ 12101, *et seq*. It is unlawful for an employer to discriminate against an employee because of his disability under the

ADA, NYSHRL, and NYCHRL. See 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . .."); N.Y. Exec. § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a).

In the Second Circuit, claims of disability discrimination under the ADA, NYSHRL, and NYCHRL require the same elements to establish a *prima facie* case. See Noll v. In'l Bus. Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015) (citing Graves v. Finch Pruyn & Co., 457 F.3d 181, 184, n.3 (2d Cir. 2006) ("[T]o the extent that [plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim.")); Daley v. Cablevision Sys. Corp., No. 12-CV-6316, 2016 WL 880203, at *4, n. 2 (S.D.N.Y. Mar. 7, 2016). Accordingly, the Court analyzes the claims jointly.

To establish a prima facie case of disability discrimination, a plaintiff must show: (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability as defined within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) due to the disability, the employee suffered an adverse employment action. Harvin v. Manhattan & Bronx Surface Transit Operating Auth., 767 Fed. Appx. 123, 127 (2d Cir. 2019) (summary order) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)).

## A.  Defendant is Subject to the ADA, the NYSHRL, and the NYCHRL

The ADA applies to any "covered entity," which it defines as an "employer, employment agency, labor organization or joint-labor management committee." See 42 U.S.C. §§ 12111(2), 12112(a). An employer is subject to the ADA if it is "engaged in an industry affecting commerce" and has "15 or more employees for each working day in each of 20 or more calendar weeks in the

current or preceding year . . ." 42 U.S.C. § 12111(5)(A). Plaintiff's complaint alleges that "[a]t all relevant times, EMHDS was and is an 'employer' and 'covered entity' under the ADA." Compl. at ¶ 27.

The NYSHRL and NYCHRL apply to all "employers." The NYSHRL defines an employer as "all employers within the state." N.Y. Exec. Law §§ 292(5), 296(1)(a). Plaintiff's complaint alleges that "[a]t all relevant times, EMHDS was and is an 'employer' under the NYSHRL." Compl. at ¶ 38. Under the NYCHRL the term employer does not include "any employer that has fewer than four persons in the employ of such employer at all times during the period beginning twelve months before the start of an unlawful discriminatory practice and continuing through the end of such unlawful discriminatory practice[.]" N.Y.C. Admin. Code. §§ 8-102, 8-107(1)(a). Plaintiff's complaint states that "[a]t all relevant times, EMHDS was an 'employer' under the NYCHRL." Compl. at ¶ 38. The June 12, 2020 Declaration of Avraham Miller ("Miller Dec."), states that "[d]efendant employed more than 4 employees for the 12 months before I started working there and continued to employ more than 4 employees through the end of my employment."

**B. Plaintiff's Condition is a Disability and Covered by the Statutes**

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff suffers from Crohn's disease. Plaintiff alleges that his condition substantially limits his major life activities, namely his ability to eat and sleep properly, move around easily, and do other physically taxing activities. Miller Dec. at ¶ 4. Therefore, plaintiff's condition meets the ADA's definition of disability. See Genova v. Cty of Nassau, No. 17-CV-4959, 2019 WL 8407451 at *7 (E.D.N.Y.

Dec. 26, 2019) (finding that plaintiff's Crohn's disease qualified as a disability and noting that the definition of disability under the ADA is to be "construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of the statute.").

The NYSHRL and NYCHRL "have a broader definition of disability than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity." Ugactz v. UPS, Inc., No. 10-CV-1247, 2013 WL 1232355 at *14 (E.D.N.Y. Mar. 26, 2013) (quoting Reilly v. Revlon, Inc., 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009) (internal quotations omitted). The NYSHRL requires that the impairment be "demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21). "[T]he NYCHRL is broader still." Rodriguez v. Verizon Telecom, No. 13-CV-6969, 2014 WL 6807834 at *7 (S.D.N.Y. Dec. 3, 2014) (quoting Pagan v. Morrisania Neighborhood Family Health Ctr., No. 12-CV-9047, 2014 WL 464787 at *6 (S.D.N.Y. Jan. 22, 2014)). The NYCHRL defines a disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Admin. Code § 8-102(16). Because plaintiff's disability is medically demonstrable by accepted clinical or laboratory techniques and it is a physical impairment, his condition qualifies as a disability under the broader definitions of the NYSHRL and NYCHRL.

### C.  Plaintiff was Qualified to Perform the Essential Functions of his Job

The ADA prohibits discrimination against a "qualified individual," defined as "someone who with or without a reasonable accommodation can perform the essential functions of the employment position." 42 U.S.C. § 12111(8)). The Second Circuit has held that a "leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work." Graves, 457 F.3d at 185, n.5 (finding a two week leave to be reasonable). See also Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351, 366 (S.D.N.Y.

2016) ("A temporary leave of absence, even an extended leave, can be a reasonable accommodation"). While, "[t]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely . . . an employee who proposes an accommodation while still on short-term leave . . . triggers a responsibility on the employer's part to investigate that request and determine its feasibility." Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 (2d Cir. 2000).

Here, plaintiff was absent from work for one week in January of 2020 when he was hospitalized due to his medical condition. Subsequently, he returned to work and was able to perform the essential functions of his job. These allegations allow the inference that an additional finite leave would have enabled plaintiff to treat his condition and return to work.

Under NYSHRL and NYCHRL, a plaintiff is qualified if he can show that he is able to perform the essential functions of his job if provided a reasonable accommodation." Fernandez, 159 F. Supp. 3d at 366. Here, as "[p]laintiff sufficiently pleads a disability discrimination claim under the more rigorous ADA standard, [he] thus has also stated claims under the NYSHRL and the NYCHRL. Rodriguez, 2014 WL 6807934, at 7; Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (explaining that the ADA and NYSHRL constitute a "floor below which the City's Human Rights law cannot fall").

The Second Circuit has held that, under the ADA, failure to engage in an interactive process does not form the basis of a disability discrimination claim in the absence of evidence that a reasonable accommodation was possible. McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 100-01 (2d Cir. 2009). However, unlike under the ADA, an employer's failure to engage in the interactive process is itself a violation under the NYSHRL and NYCHRL. See Vangas v. Montefiore Med. Ctr., 6 F. Supp. 3d 400, 420 (S.D.N.Y. 2014) ("the first step in providing a

reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested" and the "failure to consider the accommodation . . . is a violation of [the NYSHRL]" and the NYCHRL) (citing Phillips v. City of New York, 66 A.D.3d 170, 176, (N.Y. App. Div. 2009). Here, plaintiff alleges that rather than engaging in an interactive process to explore a reasonable accommodation with him, defendant terminated his employment the day after he was hospitalized. Compl. at ¶¶ 5, 18-21. Aside from alleging that his termination was discriminatory, plaintiff has also alleged that defendant failed to engage with plaintiff in an interactive process, which is itself a substantive violation of the NYSHRL and NYCHRL.

### D.  Plaintiff Suffered an Adverse Employment Action Due to His Disability

Plaintiff suffered an adverse employment action when defendant terminated him from his employment. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)) (termination is a materially adverse change of the conditions of employment); Davis v. New York City Dep't of Educ., No. 10-CV-3812, 2012 WL 139255, at *5 (E.D.N.Y. Jan. 18, 2012) (termination is an adverse action).

Under the ADA and NYSHRL, a plaintiff must also allege that his employer took an adverse action against him because of his disability. Lyman v.  N.Y. & Presbyterian Hosp., No. 11-CV-3889, 2014 WL 3417394, at *9-10 (S.D.N.Y. July 14, 2014). "[A]t the pleadings stage, . . . a plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason." Vega, 801 F.3d at 87. A plaintiff may meet this standard "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id. (citing Littlejohn v. City of New York, 795 F.3d 297, 310 (2d Cir. 2015)); see also Lyman, 2014 WL 3417394, at *10 ("[plaintiff] can satisfy her burden

10

of showing that, on her version of the facts, her disability motivated her discharge.") Under the NYCHRL, "the plaintiff need only show that [his] employer treated [him] less well, at least in part for a discriminatory reason." Mihalik v. Credit Agricole Cheuvreux N. Am., 715 F.3d 102, 109 (2d Cir. 2013).

Here, the close temporal proximity plaintiff alleges between his hospitalization, his request for an accommodation, and his termination the following day raise an inference of discrimination sufficient to sustain his disability discrimination claim. Further, defendant's stated reason for terminating plaintiff was his "absenteeism." Compl. at ¶ 21. As plaintiff alleges he notified defendant that he would be absent because of his medical condition and defendant terminated him the next day due to that absence, plaintiff has established that defendant took an adverse employment action against him due to his disability. See Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (quoting Shlafer v. Wackenhut Corp., 837 F. Supp. 2d 20, 27 (D. Conn. 2011)) ("Plaintiff has alleged sufficient facts […] [to infer] defendant terminated her employment on the basis of her 'disability' [… since] 'temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination.'"); see also Warmin v. New York City Dep't of Educ., No. 16-CV-8044, 2019 WL 3409900 at *19 (S.D.N.Y. July 29, 2019) (the close temporal proximity between plaintiff's accommodation request and the termination creates a plausible connection).

As discussed above, plaintiff has presented a prima facie case of disability discrimination. Defendant has failed to appear to offer a nondiscriminatory reason for its conduct. Therefore, plaintiff's motion for a default judgment should be granted against defendant on plaintiff's claims under the ADA, the NYSHRL, and the NYCHRL.

### IV.    Damages

A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). If a district court finds that plaintiff's allegations state a claim upon which relief can be granted, the Court may conduct a hearing or rely on affidavits or other documentary evidence to determine damages on a default judgment. Fed. R. Civ. P. 55(b)(2); see Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.'") (citation omitted)). Here, plaintiff demands back pay for lost wages, emotional distress damages, punitive damages, and reasonable attorney's fees and costs.

### A.  Plaintiff's Claim for Back Pay

"The ADA provides that a successful plaintiff shall have available the same remedies that would be available to a plaintiff pursuant to Title VII." Rosso v. PI Mgmt. Assocs., L.L.C., No. 2-CV-01702, 2005 WL 3535060, at *15 (S.D.N.Y. Dec. 23, 2005) (citing 42 U.S.C. § 12117(a)). Therefore, back pay is available in a disability discrimination case. See 42 U.S.C. § 2000e-5(g); Picinich v. United Parcel Serv., 318 F. App'x 34, 36 (2d Cir. 2009) (summary order) ("[r]emedies available to the victims of discrimination are committed to the sound discretion of the district court") (citation omitted). The purpose of back pay is to make a plaintiff whole, that is, to "completely redress the economic injury the plaintiff has suffered as a result of discrimination." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (citation omitted). To calculate lost back pay, a plaintiff's base annual compensation at the time of termination is multiplied by the length of time between termination and the date plaintiff was able to secure new employment.

12

Plaintiff is entitled to back pay here. Plaintiff's sworn affidavit provides a sufficient evidentiary basis to determine that the requested damages are reasonable. Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111 (damages may be determined based on a sworn affidavit "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment."). Plaintiff was unlawfully terminated on May 17, 2018 and was not able to secure a new job until September 2018. Compl. at ¶ 21; Miller Dec. at ¶ 10. He is, therefore, owed back pay from May 18, 2018 to September 2018. Defendant paid Plaintiff $28,000.00 per year, over a period of 12 months. Miller Dec. at ¶ 2. There are approximately 15 weeks between May 18, 2018 and September 2018. Therefore, plaintiff is entitled to $8,076.92 in back pay damages.[3]

### B.  Plaintiff's Claim for Emotional Distress Damages

"The Second Circuit sorts emotional distress claims into three categories of claims: 'garden-variety,' 'significant' or 'egregious.'" Cavalotti v. Daddyo's BBQ, Inc., No. 15-CV-6469, 2018 WL 5456654 at *27 (E.D.N.Y. Sep. 8, 2018), quoting Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005). "Garden-variety" emotional distress claims contain little evidentiary support and are marked by "vague or conclusory" testimony of emotional harm without explanation of the severity or consequences of the harm. Rainone, 388 F. Supp. 2d at 122. "Significant" emotional distress claims are based on "more substantial harm or more offensive conduct" and are often supported by medical evidence or corroborating testimony. Id. at 122-23. "[E]gregious" emotional distress claims exist where the discrimination alleged is "outrageous and shocking or where the physical health of plaintiff was significantly affected." Id. at 123.

---

[3] (($28,000/ 52 weeks) x 15 weeks) = $8,076.92.

Plaintiff demands $300,000 in emotional distress damages, a very high award that would require a finding of egregious emotional distress.[4] Claims for damages beyond the garden variety typically involve corroboration by witnesses and medical evidence. Plaintiff has not presented such evidence here.

In his sworn declaration, plaintiff attests to his "severe emotional distress" in four sentences. See Miller Dec. at ¶¶ 6-9. He states that he has been treated by a therapist and psychiatrist, that he was prescribed medication for anxiety associated with the discrimination, and that he went to the emergency room as a result of the stress he endured. Id. at 7-9. He has not shown proof of this medical treatment, nor does he assert how long he received mental health treatment or if the treatment is ongoing. Plaintiff has, however, submitted a list of witnesses that he would like to present if a damages hearing is scheduled. See ECF No. 14. Accordingly, the Court declines to award emotional distress damages based on the instant record. If this Report and Recommendation is adopted, plaintiff may request an inquest to establish his emotional distress damages.

---

[4] When Rainone was decided, over 15 years ago, plaintiffs with garden-variety claims generally received between $5,000 and $35,000, $50,000 to $100,000 for plaintiffs with significant emotional distress claims, and over $100,000 for plaintiffs with egregious emotional distress claims. Rainone, 388 F. Supp. 2d at 122-23.

Since Rainone was decided in 2005, several Judges in this district have applied the Bureau of Labor Statistics' ("BLS") Consumer Price Index ("CPI") inflation calculator to the ranges of damages awarded for emotional distress damages. See Gutierrez v. Taxi Club Mgmt., Inc., No. 17-CV-0532, 2018 WL 3429903, at *9 (E.D.N.Y. July 16, 2018) (adjusting rates for inflation); Antoine v. Brooklyn Maids 26, Inc., No. 19-CV-5676, 2020 WL 5752186 (E.D.N.Y. Sept. 26, 2020) (same).

Applying the CPI inflation calculation, from September 2005, when Rainone was decided, to December 2020, the last date for which BLS computes the CPI adjustment, a plaintiff in 2020 alleging garden-variety claims would be entitled to between $6,700 to $47,000 for garden-variety claims; $67,000 to $135,000 for significant claims; and upwards of $135,000 only for egregious emotional distress claims. See CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (last visited Feb. 2, 2021).

### C.  Plaintiff's Claim for Punitive Damages

Plaintiff seeks punitive damages in the amount of $924,230.76. ECF No. 12, Memorandum in Support of Motion for Default, ("Mem. in Supp.") at 13. Punitive damages are available under the ADA "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.S. § 1981a(b)(1). Punitive damages are warranted under the NYSHRL and NYCHRL if "the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." Chauca v.  Abraham, 30 N.Y. 3d 325, 334 (N.Y.  2017) (citing Home Ins. Co. v. Am. Home Products Corp., 75 N.Y.2d 196 (1990)). "Beyond the fact of mental anguish caused by discriminatory conduct, there must be some evidence of the magnitude of the injury, to assure that [the Court's] damage award is neither punitive nor arbitrary." Kreisler v. Second Ave. Diner Corp., No. 10-CV-7592, 2012 WL 3961304, at *14 (S.D.N.Y. 2012) (citing In re N.Y.C. Transit Auth. v. State Div. of Human Rights, 78 N.Y.2d 207, 217 (N.Y. 1991)).

The two cases that plaintiff cites in his Memorandum, in support of his request for significant punitive damages, involve instances of egregiously offensive, discriminatory behavior and comments. Salemi v. Gloria's Tribeca, Inc.,115 A.D.3d 569 (1st Dept 2014) (employee plaintiff was entitled to $1.2 million in punitive damages where the extensive record evidence, corroborated by multiple witnesses, showed that the employer forced plaintiff to attend weekly prayer meetings and subjected plaintiff to an "incessant barrage" of offensive, anti-homosexual comments); McIntyre v. Manhattan Ford, Lincoln-Mercury. Inc., 256 A.D.2d 269 (1st Dept.  1998) (plaintiff was entitled to $1.5 million in punitive damages considering "the egregiousness of

defendant's misconduct," which included her direct supervisor engaging in a pattern of intimidation, humiliation, and ridicule, often by using sexually explicit language). These cases are not analogous to the facts alleged in the present action.

Here, plaintiff alleges that Rabbi Fine told plaintiff, "from now on please keep your privacy. . ." Compl. at ¶ 5. While Rabbi Fine, "surely could have treated [plaintiff] more delicately, his conduct did not evince a reckless disregard for [plaintiff's] federally-protected rights." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 573 (2d Cir. 2011) (affirming district court's finding that an award of punitive damages was inappropriate where there was "little if any evidence of malice or reckless indifference or egregious or outrageous behavior" when defendant's personnel made a statement that plaintiff was being "overemotional" after an incident of sexual harassment). Plaintiff has not established that defendant has willfully, wantonly, negligently, recklessly, or consciously disregarded the rights of others or engaged in conduct so reckless as to amount to such disregard. Accordingly, plaintiff's request for an award of punitive damages should be denied on the instant record.

**D. Attorney's Fees and Costs**

Under the ADA, the NYSHRL, and the NYCHRL, the Court may award reasonable attorney's fees to a prevailing plaintiff. 42 U.S.C. § 12205; N.Y. Exec. Law §297(10); N.Y.C. Admin. Code §8-502(g). Applications for fee awards must be documented by time records which specify the date, time expended, hourly rate, and description of the work done by each attorney. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Determining the reasonableness of the fee to be awarded is within the sound discretion of the district court. Arbor Hill Concerned Citizens Neighborhood

Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008) (noting the "considerable discretion" trial courts exercise in awarding attorneys' fees).

In the Second Circuit, courts awarding attorney's fees calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d 183-84. A reasonable hourly rate is generally calculated by reference to the prevailing hourly rates in the district where the court sits for attorneys of "comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998).

Plaintiff's counsel has submitted their contemporaneous time records for the Court's consideration. See ECF No. 11, Declaration of Christopher H. Lowe ("Lowe Dec.") and ECF No. 11-3, Billing Records, ("Bill. Rec."). Plaintiff requests a rate of $400 for attorney Christopher Lowe, which is reasonable considering that he is a partner and has practiced employment law for over 20 years.[5] Gutman v. Klein, No. 03-CV-3296072, 2009 WL 3296072, at *2 (E.D.N.Y. 2009) (approving rates of $300–$400 for partners); see also Konits v. Karahalis, 409 Fed. App'x 418, 422–23 (2d Cir. 2011) (summary order) (affirming holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour); Morales v. B&M Gen. Renovation Inc., No. 14-CV-7290, 2016 WL 1266624, at *11 (E.D.N.Y.

---

[5] In the future, when citing cases in support of plaintiff's request for fees, counsel shall cite cases from the district where the Court sits. Plaintiff's Memorandum cites four cases from the S.D.N.Y. and only one case from the E.D.N.Y. in support of its requested rate for Mr. Lowe. This is not the law in this Circuit. See Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (vacating the district Court's award of attorney's fees insofar as they were calculated based on prevailing rates in the S.D.N.Y. rather than the E.D.N.Y.).

Mar. 9, 2016)  (Report and Recommendation), adopted by 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016) ("the prevailing hourly rate for partners in this district is between $300 and $400").

For attorney Sara Issacson, a fifth-year associate who graduated in 2015 from Benjamin Cardozo School of Law and who has "practiced almost exclusively in employment law since graduating," Lowe. Dec. at ¶ 7, plaintiff requests an hourly fee of $300.  Absent more information, the Court cannot conclude that this is a reasonable rate.[6] Yu Wei Cao v. Miyama, Inc., No. 15-CV-0266, 2020 WL 4808624, at *2 (E.D.N.Y. Aug. 18, 2020) (finding a fee of $300 to be reasonable for an attorney who served as lead counsel, graduated law school in 2013, has primarily practiced labor and employment litigation, has tried several cases in federal court, has litigated over one hundred wage-and-hour cases in federal court or in arbitration, and was previously awarded fees and/or approved at an hourly rate of $250 and $320); Local 1922 Pension Fund v. Broadway Elec. Supply, Co., No. 19-CV-2344, 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020) (recommending an hourly rate of $300 for an attorney who had been practicing exclusively labor and employment law for at least eight years).

---

[6] Plaintiff's Memorandum does not provide any additional information about Ms. Isaacson's experience. It also mostly references cases from the S.D.N.Y. Only two cases listed in support of plaintiff's request for a $300 rate for Ms. Isaacson are from this district. One is Hall v. Prosource Techs., LLC, No. 14-CV-2502, 2016 WL 155512 (E.D.N.Y. Apr. 11, 2016). This case was a FLSA collective action and NYLL class action where claims were pursued on behalf of approximately 535 individuals. The size and complexity of that case justified the $300 rate for an attorney with six years of experience. The present action involves a single plaintiff moving for a default judgment. The second case, Finkel v. Captre Elec. Supply Co. Inc., No. 15-CV-3584, approved a $300 fee for a sixth-year associate. Ms. Isaacson is a fifth-year associate.

The Court located two cases from 2018, where Ms. Isaacson was awarded $175 as a reasonable rate. Osorio v. Taste of Thai, Inc., No. 17-CV-5664, 2018 WL 8059564, at *15 (E.D.N.Y. Sep. 12, 2018) (Report and Recommendation) adopted by No. 17-CV-5664, 2019 WL 1795954 (E.D.N.Y. Mar. 25, 2019); Lopez v. Royal Thai Plus, LLC, 2018 WL 1770660, at *13 (E.D.N.Y. Feb. 6, 2018) (awarding $175 for Ms. Isaacson when she had three years of experience). Plaintiff has not cited any cases where Ms. Isaacson has been awarded the hourly rate she requests here.

Indeed, in this District, reasonable hourly rates range $200 to $300 for senior associates and $100 to $200 for junior associates. First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., No. 10-CV-696, 2013 WL 950573, at *7 (E.D.N.Y. Mar. 12, 2013) (collecting cases. In addition to an attorney's experience level the Court must "take into account case-specific factors to help determine the reasonableness of the hourly rate[ ]." Pinzon v. Paul Lent Mech. Sys., No. 11-CV-3384, 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012) (Report and Recommendation), adopted by 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

Plaintiff's requested rate for Ms. Isaacson is at the high end of the senior associate scale. Given the default posture of this case, this is not the appropriate hourly rate. See Sun v. AAA Venture Capital, Inc., No. 15-CV-4325, 2016 WL 5793198, at *12 (E.D.N.Y. Sept. 12, 2016) (Report and Recommendation) adopted as modified by No. 15-CV-4325, 2016 WL 5868579 (E.D.N.Y. Oct. 6, 2016). Accordingly, the Court reduces plaintiff's requested rate for Ms. Isaacson from $300 per hour to $250 per hour. The Court has reviewed plaintiff's Billing Records, ECF No. 11-3, and finds them reasonable. The Court therefore recommends that plaintiff be awarded attorney's fees in the amount of $8,950.[7]

Plaintiff is also entitled to recover costs. See 42 U.S.C. § 12205; N.Y.C. Admin.  Code §8-502(g). Plaintiff seeks $400 in expenses for the filing fee. This request should be granted and plaintiff should be awarded costs in the amount of $400.

---

[7] Mr. Lowe's 11.5 hours multiplied by his approved rate of $400 yields a fee of $4,600. Ms. Isaacson's 17.4 hours multiplied by her approved rate of $250 yields a fee of $4,350.

**CONCLUSION**

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part. Plaintiff should be awarded $8,076.92 in damages for backpay. Plaintiff's request for punitive damages should be denied. Plaintiff should be awarded $8,950 in attorney's fees and $400 in costs. If this Report and Recommendation is adopted, plaintiff may request an inquest regarding his emotional distress damages. Plaintiff is hereby ordered to serve a copy of this Report upon Defendant at its last known address and to file proof of service on the docket forthwith.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: February 15, 2021
        Brooklyn, New York